Counsel, you may proceed. Thank you, Your Honor. It pleases the court. My name is Robert Franz. I'm the attorney for the officers in this case. It's a pleasure to be back and welcome all of the students here back at my law school. But it's more of a pleasure to be in front of Justice Levy again. I first appeared before you in 1973 when I had just graduated from Oregon. And I had a motion with you and you politely tore me apart. So I hope your demeanor is the same. All right. Cutting right to the chase, we have Hartman v. Moore decided in April 2006. And of course Hartman was the United States Supreme Court case that found if you have probable cause, you cannot bring a First Amendment retaliation claim. And then we had Reichel, which was decided by the United States Supreme Court in 2012. And in that case, the Supreme Court said that it was not clearly established that there is a need for probable cause in a retaliatory arrest case. In other words, if you have probable cause to arrest a person, they do not have a First Amendment claim because it was not clearly established that that violated the law. So simply stated, and it's kind of important as to what the Supreme Court said in Reichel, and I want to just quote a part here. It says, although the facts of Hartman involved only a retaliatory prosecution, reasonable officers could have questioned whether the rule of Hartman also applied to arrest. And then the Supreme Court said a reasonable official also could have interpreted Hartman's rationale to apply to retaliatory arrest. Now it's interesting as to what has been taking place in the circuits after Hartman, but simply stated, and in fact this is from a Massachusetts case, how a judge analyzed it, the judge basically said, if your arrest took place between 2006 and 2012, as a matter of law, you're qualified immunity. And the reasoning being is because the Supreme Court said reasonable officers could come to the conclusion that Hartman did extend to retaliatory arrest. Now let's just take a look at the Ninth Circuit, and I'm not sure I'm pronouncing the name correctly, but Scrooge, S-K-O-O-G, was the first case, and that was pre-Hartman, and in that case it said, it's interesting, it found qualified immunity, but what the Ninth Circuit said in Scrooge said, at the time of the search the right we have just defined was far from clearly established in this circuit or in the nation. We have decided only today that a right exists to be free of police action for which retaliation is a but-for cause, even if probable cause exists for that action. At some future point this right will become clearly established in the circuit. And so they granted qualified immunity, and that was 2006 pre-Hartman. Then we had Ford, the Ford case, which this circuit for the first time actually did say there was probable cause for the arrest, but we're going to let it go to the jury because on the issue of retaliation. In that case the officer himself arrested the motorist, and he has the motorist by the side of the road, and the motorist is talking back to him, and he says, listen, I'm thinking about arresting you. Now if you cooperate with me I'm not going to arrest you. And if you quit mouthing off I am going to arrest you. And so in Ford the Ninth Circuit found that was enough to go to the jury on retaliatory arrest, even though it was probable cause. The one dissent in that case argued, listen, after you have taken somebody into custody for the arrest, what they mouth off back to you is not protected. Now it would sound then that our arrest took place in 2010 between Hartman and Reichel. So a good argument could be made, well, Mr. Franz, isn't it established now by Ford that probable cause is not enough to defeat a retaliatory false arrest case, I mean a retaliatory arrest. The problem is we have Acosta, and Acosta was decided by this circuit in 2013. It was an arrest that took place in 2006, but it's still the time of the decisions coming out. And in Acosta this circuit said probable cause defeats a First Amendment retaliatory claim. Now it phrased it in the terms of qualified immunity, but Acosta was the person that appeared in front of a city council meeting and he was escorted out. So here's what the Ninth Circuit said in Acosta. Assuming Acosta's contention accurately reflects why he was arrested, Acosta's claim still fells under prong two of Saucer. In Reichel the Supreme Court held that it had never recognized nor was there clearly established First Amendment right to be free from a retaliatory arrest that is otherwise supported by probable cause. It is not clearly established that an arrest sorted by probable cause could give rise to First Amendment violation. And then the court found probable cause, and then this Ninth Circuit said, thus even assuming that Acosta was arrested in retaliation for his remarks, because probable cause existed for a violation and it cites a statute, the officers are still entitled to qualified immunity. Counsel, does our Beck case have any impact in this analysis? Which one is it, with the Beck? Beck. I'm not sure I'm familiar with that case. Beck versus City of Upland, California Ninth Circuit case? What year? 2008. Okay, I'm not sure of the facts of that case, Your Honor. Well, that's fine. Yeah, my position would be that because the United States Supreme Court has held that it's not clearly established in 2012, and that a reasonable officer could interpret Hartman that way, that because we're in that time period, there has to be a qualified immunity, especially in light of Acosta. Now, if you take a look, one of the interesting questions that the Supreme Court asked about the Tenth Circuit in RICO was, can a clearly established right be established by one circuit? Now, what's interesting is in the RICO case, it basically refers to every police officer. So an interesting point is, as of today, eight circuits have found that it's not clearly established. So because the Supreme Court says we've never recognized a right, eight circuits have found it's not clearly established. Three circuits have found probable cause will defeat a First Amendment claim. There's only one circuit that is saying or implying that probable cause will not defeat a First Amendment claim, and that's the Ninth Circuit. So I don't think that one circuit can establish a clearly established right on this issue because of all the contrary circuits. So, Mr. Franz, when is it going to be clearly established that probable cause does or does not stop a First Amendment retaliation claim? It's going to be established when the Supreme Court says so. So you're relying on Hartman, essentially. Yes, and the fact that RICO gave Hartman so much credibility. Okay. And so the real question, and then the real question at some point in time, is there going to be a right? And the Supreme Court is just going to have to make the decision, there is a right, probable cause does defeat a First Amendment claim or it does not. So then what makes this issue kind of ripe for you and ripe for anybody that wants to review this? In this case, the district court found that there was probable cause. In other words, under the Fourth Amendment, the search was supported by probable cause, the arrest was supported by probable cause. Because remember, under the Fourth Amendment, to establish probable cause, the subjective belief of the officer is not important. So that's how these circuits are getting with the mix-up. They're getting a Fourth Amendment claim where subjective intent is not relevant, and then you get to the First Amendment where subjective intent is kind of controlling everything. I found it interesting also the district court in our case found that to be clearly established, you just have to give fair notice to the officer that what he might be doing is wrong. The Supreme Court in RICO said it has to be beyond debate. And remember, in RICO, where the Supreme Court is reviewing the other circuits to see whether or not it was clearly established that Hartman also extended to retaliatory arrest, the Supreme Court took a look at the other circuits and found, and they make the statement, and I kind of copied the statement in my briefs, they made the statement that if judges are in a debate and dispute about whether it's clearly established, how do you expect the police officer to be? And that's kind of my same argument to this court. What about the officer reading a custody decision in 2013 where this court held qualified immunity if there's probable cause? If panels of this circuit are confused, how is the officer going to know what's clearly established? The judges can sign search warrants and they're immune from liability, but the police officer isn't, if he should have known the search warrant was issued wrongfully. Prosecutors are immune from liability for prosecuting people. The officers aren't. The officers are the only ones without legal training as attorneys, yet all the burden is placed upon them, and they're the ones being sued for the damages. Our system, it does not make sense under our system that you can commit a crime and that you can be arrested, but as you're going to jail, the guy can be filing a lawsuit against you for violation of a person's First Amendment rights. If you don't want to be arrested, don't commit a crime. If you commit a crime, you're going to be arrested, and the First Amendment's not going to protect you if there's probable cause. So I'm going to reserve some time here and respond to that. You may do so, counsel. Mr. Pickering? Good morning, members of the panel. If it pleases the court, as you may already know, I'm appearing pro se because my attorney retired last December and had a heart attack shortly thereafter. He has not provided me with the case file and briefs, so I must rely on his response already in the record. However, I am uniquely qualified to appear here today because I'm the only person in this room who witnessed the material facts of the case from the very beginning. Now, I've done a little pro se work in state appellate court. Unfortunately, they don't allow for oral arguments, so I have no experience doing this, but I did some research on qualified immunity, and Harlow v. Fitzgerald replaces the malicious standard with a reasonable personal standard to judge whether or not qualified immunity should be granted. So, in other words, to reverse the district court and grant qualified immunity to the appellants would require this panel to determine whether or not the appellants acted as reasonable persons who should have known that their conduct was not permitted. But please carefully consider that a reasonable person would have known, based on his experience as a peace officer, using an old-fashioned term, that there are usually two sides to every conflict. A reasonable person would have wondered what behavior on the part of my accuser might have motivated me to be recording and photographing him. A reasonable person would have applied skepticism to the accuser's claim to have slammed on his brakes, swerved, and passed all at the same time. A reasonable person would have gone to the scene to look for skid marks to support the accusations. A reasonable person would not have enhanced the reported Class B infraction of sudden stop or deceleration, which is ORS 811.500, to the Class A misdemeanor of reckless driving when there is no accident or proof of reckless driving, and then add the charge of reckless endangerment, again, when there is no actual collision. A reasonable person would have exercised restraint and investigated further after I told him that my accuser lied to him and that I had video of the encounter, even if he had already presumed my guilt. That may have caused him to want to see my evidence. Now, a reasonable person would have considered that if there had been a near collision, that there would have been other calls to 9-1-1 to report the dangerous driving, but there were none. And I know this because when I told my... I was talking to my mom, telling her about the arrest and so forth, and I told her that there were no other calls to 9-1-1, she said, how do you know there weren't any other calls? And I said, Mom, because it didn't happen. There wouldn't have been calls if nothing was to be reported. So anyway, a reasonable person would have acted with extreme caution to avoid again arresting a person who they had arrested and charged due to false allegations just a few years earlier, which they also failed to investigate before making an arrest. So this case began basically in 1999 when I tried to file a complaint against a Benton County Sheriff's sergeant. I was arrested within minutes of that. I was arrested a month later by the same sergeant. I was arrested in January of 2000, and I was arrested in 2003 and arrested in 2010, all on false charges. Except the 2000 arrest, I put a tape recorder on my dash because I was pulled over for no apparent reason, and I thought by putting the recorder in plain sight, I was covered, as that qualified as notification that I was recording him. And I pled no contest to a violation in that case. But the other cases, the charges were not even filed in court or dropped before trial. So there's a long history, a 10-year history, of retaliatory pattern and practice of violating my civil rights because they don't like me because I tried to file a complaint against them. And I'd like to direct your attention to page 2 of Defendant Duffet's declaration. Right there... Mr. Vickrey, do you happen to have the citation to the record? What page of the record? Oh, I'm sorry, no. See, I didn't get the appellate record at all, Your Honor. Very well, thank you. But I'm going on page 2 of Mr. Duffet's declaration. He talks about receiving a report of a reckless vehicle as reported on Highway 99W. The plate was registered to the plaintiff, David Pickrey. So right there, he finds out who I am. So that removed all reasonable actions, or it biased his probable cause. So then he goes on to describe what the complainant said. And I'll just read from the declaration. He told me that he was driving southbound on Highway 99W near Lewisburg when he noticed a light green Toyota with license plate ELKETR following him and taking pictures of him. He saw the man in the Toyota taking pictures of him with the camera held above the steering wheel. The driver of the Toyota was taking pictures while driving. The man was also flipping off Humphrey and mouthing words as he drove. Humphrey was watching this in his rearview mirror, and he was afraid of the vehicle following him. So he pulled his vehicle to the side of the road to allow the other driver to pass. The other driver did not initially pass, but finally did pass Humphrey's car and sped off. Now this is describing distracted driving. First of all, why is he looking in his rearview mirror at me? What did he do to cause me to take video of him? So that's kind of not mentioned at all by this accuser. So he goes on to say, Humphrey did not know why he was being followed and thought it might be because he had an Obama sticker on or a light out. Humphrey told me at the Highway 99 and Conifer stoplight, the driver of the Toyota got out of his vehicle and took pictures of Humphrey. Now those are in the record, and that's the first still photo. Now he said he told the officer that he was afraid of me, but this photo shows him leaning out the window like this. Now you don't need to be a Ph.D. in anthropology to know that that's a provocative gesture. That is not a person who is afraid. So now, here he describes the actual alleged crime. They began to drive again with the Toyota in front of Humphrey's car. The man in the green Toyota then all of a sudden slammed on the brakes of the Toyota, bringing the Toyota to a complete stop. Humphrey estimated the speed of the Toyota to be 35 to 40 miles per hour before it stopped completely. Humphrey had to slam on the brakes to his car due to this action and had to immediately swerve his car around the Toyota to avoid an accident. Humphrey's car nearly hit the Toyota, coming within an estimated 6 inches. As soon as Humphrey passed the green Toyota, the Toyota started up again and drove up behind Humphrey again. Now this is two lanes of traffic on Highway 99 at 4.15 or so in the afternoon. Both lanes are pulling out from a red light. I was in the right-hand lane at the red light. So this accuser says that I slammed on my brakes and then he slammed on his brakes and swerved around me in spite of a full lane of traffic to our left and then passed me. So now here's where Defendant Duffet established a criminal charge, what he used for probable cause. I asked Mr. Humphrey if at any point during the encounter he was in fear of imminent serious physical injury. Mr. Humphrey told me, and now this part is in quote marks, all the other narrative is not in quote marks, but now this is the quote marks of an 18-year-old macho guy. Instead of saying, yeah, yes, absolutely, he says, quote, when he slammed on his brakes, I was in fear of serious injury, close quote. So that sounds like a lawyer responding. So this is fabricated. This is a lie to establish probable cause when all that was reported was an ORS 811.500 violation, which never happened. Now the photo that you have in the record that shows Humphrey making the provocative gesture also shows a school bus right behind him. They didn't ask for my evidence that I told them I had. They asked if I had it on me, and I said no, honestly, because it was in my car. They never asked beyond that until they busted down my door with a battering ram. By the way, they left the search warrant in the car, but they brought the battering ram. Busted down my door. I told them right exactly where it was. I had made a CD copy for the DA as pretrial evidence, or I'm sorry, pretrial discovery. So I was willing to clear my name. I had nothing to hide. So then instead of looking at that video, those photographs, and seeing a bus driver and getting the bus driver's statement, as I did, they charged me with crimes, which again were never filed in court. So the bus driver's statement is exculpatory. It contradicts what the witness told them, and this all could have been avoided if they had only done an investigation, which they refused to do because they wanted to get me, because they had to settle a lawsuit in 2007 for almost identical circumstances where a neighbor accused me of trespassing because he didn't know where the property line was. So they came to my door at night without a warrant, and they knocked on the door, and they said, well, we want to talk to you. I said, do you have a warrant? They said, I don't need a warrant. So they started pounding and kicking the door. Now, Payton v. New York and Wills v. Wisconsin says that they have to have a felony warrant and exigent circumstances for a nighttime arrest in the home. So they're pounding on the door, and it's cracking. It's a cheap door in a rental unit. So I call 911 to try to get the state police out there for some adult supervision. Of course, the dispatcher refused to connect me with the state police. I ended up, I opened the door so I wouldn't have a broken door and be arrested. They arrested me, and when they found out that there was no trespass at all, did they apologize? No. They charged me with improper use of 911, and Clatsop County DA Special Prosecutor Joshua Marquis lied to the court and said that the trespass charge was dropped because the victim left the state. That's an entirely different case. It's a different case, but it establishes that they were never reasonable in dealing with me since 1999 when I tried to file a complaint. I want to interrupt you for a question. Sure. Now, your brief, or the brief filed on your behalf, uses the term 911 call and call to a dispatcher interchangeably. Now, there was a call to the police while you were picketing on the occasion when you were arrested. Right. And the report to the police was that someone was harassing you. Right. Is that right? Yeah. Sorry, I got a little bit of a dry mouth. All right. And the police showed up in response to your call. Well, actually not, Your Honor. I called. I was picketing what I believe was police misconduct by the Corvallis police in another case, and a guy started harassing me, and he was defending them and all that. And I said, do you understand about the First Amendment? And he said, well, do you understand about the Second Amendment, which I took as a threat that he was armed. So I called, and I never, since I've been, I was convicted of improper use of 911. So I've never, I'll never call 911 the rest of my life. So you called a dispatcher. I called, yes. And they harassed me. They said, well, what's it say on the sign? I said, it doesn't matter what it says on the sign. I'm lawfully protesting. Right. So they refused, and I hung up on them, I think. So then the other guy apparently called, and that's where the two officers came out. And then I tried to just go away and get out of there, and they followed me and detained me. And by the time they arrived, by the time the police arrived in response to your call, the person that you were complaining about had departed the scene? I don't know. That was a block away from where they actually arrested me. I just kind of walked away. In Corvallis, there's been a long-running anti-war protest in front of the courthouse. So I was trying to go down to where they were so I had some witnesses around. All right. One more question, and then I'll be finished. The court mentioned the strength of probable cause and adjudicated that the probable cause was marginal or weak. Right. There is no discussion of the fact that the police conferred with the deputy DA and was told by the deputy DA, yes, you have probable cause to make the arrest. None of the cases that have been cited have that factual scenario in them, as I understand it, where the person not only is accused of retaliatory arrest but also made the arrest not only on probable cause that the policeman determined that he or she had, coupled with advice from a deputy DA telling him, yes, you have probable cause, and that's our case here. Well, Your Honor, I'm glad you asked that question because, first of all, there's no declaration from the assistant district attorney in the record. So I don't know if that's fabricated or not. The interesting point is that he got one side of the story from an 18-year-old non-resident. Now, I have tires on my car that have more experience on the highway than this guy did. But now, I'm sorry, so they didn't talk to me to get my side of the story. As I said, there are two sides to every story. He went to the DA first to get her blessing for an arrest before he even got my side of the story. So, you know, this is not 1692 Salem, Massachusetts. This is 2010 Oregon, where we're supposed to have constitutional rights. And I never got due process under the 5th and 14th Amendment because there are never charges filed in court. Yet the district court has found me guilty of these charges, which I didn't do, and I can prove. I have a statement from the bus driver that contradicts the charges. So, you know, I'm totally innocent. I'm the victim of an 18-year-old who was afraid of me reporting his own reckless driving. Thank you, Counsel, Mr. Pickray. Your time has expired. Thank you. Mr. French, you have some reserve time. Yes, thank you. The picture that he's referring to, Mr. Pickray got out of his pickup and then took a picture back at Mr. Humphrey. You can see Mr. Humphrey is on the phone with 911. The 911 transcript and tape has been produced into evidence. So you have the live hearing of Mr. Humphrey as he's driving on the road, and you have his voice. And, for example, he's talking to the dispatcher. He says, I'm still on 99. I just passed. Oh, what is that? Oh, man. Oh, Jesus Christ. Hold on a sec. The dispatcher says, What color vehicle does he have? Humphrey says, It's green. It's a green truck. And then, you know what? Dispatcher says, Okay, we know the person. Humphrey says, He's trying. He's trying to. Dispatcher says, He's trying what, sir? Ah, I just got past him. All right. So he just hit the brakes while I was directly behind him. I almost rear-ended him. So we have actually what Humphrey said. They never took the deposition of Humphrey to contradict anything Duffet said Humphrey told me, and they never took the deposition of the DA to dispute the issue that Humphrey, I mean that the officers did talk to the district attorney. Those facts are undisputed. You could listen to the tape yourself, and you would come to the conclusion that there's probable cause when you combine it with what Humphrey's told Duffet, which is undisputed. And so that's why when I said this is a perfect case for probable cause is because there is probable cause, even if you were to review that de novo. And of course, second of all, there's no cross-appeal on the issue of probable cause. This interlocutory appeal would have had jurisdiction for a cross-appeal on the issue of probable cause because that's one of the issues before this court. So because there's no cross-appeal on that issue, probable cause that was established by the district court judge stands. And it was interesting to me that the district court judge did say weak probable cause. That's based upon a decision, the Detrich decision here of the Ninth Circuit, where they're now starting to go weak probable cause, strong retaliation. How can you have weak probable cause? You either have probable cause or you don't have probable cause. And so our position is that I don't understand this weakness when you have an eyewitness. And the beauty about this case, it's not like the Ford case where the credibility of the officer's involved. It's the credibility of the officer that you ran in the red light, that I went up to you, that I talked to you. That's the credibility of the officer. Here, the credibility is Humphrey because all we're doing is taking a citizen who is involved in roads raids, his statement. So that's even another reason that if you took a baby step and said, well, maybe we, some point in time, would decide that probable cause won't defeat a First Amendment claim. But what we are recognizing that when probable cause is based upon the credibility of a third party and not the credibility of the officer, that probable cause will defeat any First Amendment claim. And then lastly, when the officers were going to Mr. Percre's house to arrest him and Mr. Percre called into the dispatch so they knew he was down there picketing, that's the only reason we went down there to arrest him where he was picketing is because he called. And then you will see from the reports that when they did approach Mr. Percre, he started pointing their face and then he said, I'm not talking to you anymore. So the two sides of the story, he didn't want to give his side. Thank you very much, unless you have some questions. No questions. Thank you, counsel. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Leavy